RUNNELS *v.* BURDINE, d/b/a BURDINE CONSTRUCTION Co.

No. 40882          October 27, 1958          106 So. 2d 49

*Kellner & Kellner, Fountain D. Dawson,* Greenville, for appellant.

*Farish, Keady & Campbell,* Greenville, for appellee.

ROBERDS, P. J.

On and before April 15, 1955, the Texas Gas Transmission Corporation was the owner and operator of a large natural gas compressor station located near Greenville, Mississippi. On that day Texas entered into a written contract with Longview Equipment Company, a partnership, under which the Equipment Company agreed to construct for Texas an addition to the existing station at a total price to be paid Longview of $281,160. The plans and specifications required Longview to construct certain specified concrete piers on which pipes

would rest. The suitable machine to be used in the construction of these concrete piers, or pillars, was what is called a "dragline". Longview did not own a dragline. It made an oral agreement with the Burdine Construction Company, a partnership, under which Longview would use the dragline to construct the piers. The operator of the dragline was Woodrow Kelly. On September 22, 1955, while Kelly was operating the dragline, a bucket attached to the dragline, and which bucket was full of concrete mix, struck Runnels, the appellant, causing personal injuries to Runnels, who was an employee of Longview working on the job of constructing the addition to the compressor station. Longview's insurer paid Runnels for thirty-four weeks disability under the Mississippi Workmen's Compensation Act and then made a lump sum final settlement of all liability to Runnels under that Act. The total amount paid Runnels by Longview was $7,445.21. The insurer claims reimbursement out of any funds which Runnels might recover in this action.

On November 30, 1956, Runnels filed a declaration in the circuit court against Burdine in an endeavor to collect from Burdine money damage for the personal injuries he suffered as a result of being struck by the bucket attached to the dragline while the dragline was being operated by Kelly. Burdine, in his answer to the declaration, denied all liability. He denied that Kelly was negligent, but, if so, he further pled that Kelly was not his servant but was the servant of Longview in the operation of the dragline. At the close of all of the testimony in the case, the learned trial judge, on proper motion, directed the jury to return a verdict for Burdine, which was done, and judgment was entered accordingly. From that action, Runnels appeals here.

The trial judge did not deliver an oral opinion: He simply sustained the motion of Burdine for a peremptory instruction. However, it is evident he did that on the assumption that Kelly was not the servant of Bur-

dine. The action could not have been grounded on non-negligence on the part of Kelly, because the natural inference from the testimony of Kelly himself, as well as that from other evidence, is that Kelly was negligent. Therefore, we deal only with the question of whether Kelly was the servant of Burdine.

The arrangement between Longview and Burdine was oral but there is no substantial dispute as to its terms. Burdine owned the dragline. Kelly was an experienced dragline operator. He worked for Burdine in the operation of the dragline when Burdine had work for him to do. Burdine leased the dragline to Longview, including the operator thereof, for which Longview agreed to pay Burdine $12.50 per hour, which covered the use of the dragline and the services of Kelly at the rate of $1.75 per hour, Burdine furnishing the fuel required in the operation of the dragline. The case here really turns on who had the right to control Kelly and direct him about his work as operator of the dragline at the time of the accident September 22, 1955. Boiled down, we think the testimony shows, without substantial dispute, that Longview had the right to, and did, control and direct Kelly's work.

In the first place, there is no question here of the liability of an independent contractor, as Runnels seems to assume on this appeal. Longview did not sublet to Burdine any of the work it contracted to do for Texas. There was no subcontract. No part of Longview's duties to Texas constituted the subject of any agreement between Longview and Burdine. The contract between Longview and Burdine was simply a lease arrangement under which Longview was to use a machine and an experienced operator thereof and pay $12.50 an hour for such use. All of the testimony, as we construe it, shows that such right of control was in Longview and it exercised it. So far as this record discloses Burdine was never on the premises used by Longview in the construction of the addition. There was no need, nor was there

opportunity, for him to direct and control the use of the dragline. All workmen on the premises were in the employ of Longview. Directions had to be given to Kelly in his endeavor to place the buckets containing the concrete mix in place for deposit of the concrete in the proper place upon the pillars. The construction of the pillars was a part of the job undertaken by Longview in its contract with Texas. While the testimony as to the identity of some of the individuals who directed the control by Kelly of the buckets containing the concrete, it is perfectly clear that such persons were all working on the addition job under the Texas contract and were employees of Longview, whether they were designated by the witnesses as ''a tall man'' or by some other description. Burdine never had a man on the Longview-Texas job.

What is the rule of liability upon the lessor under a lease arrangement of this type?

The rule has been stated in these words: ''The fact that a person is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may be held liable for his acts. Indeed, as a general proposition, if one person lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom he had been lent, although he remains the general servant of the person who lent him.  * * *''  35 Am. Jur. 970, Sec. 541.

The same rule is stated, though in somewhat different language, in 56 C. J. S., Master and Servant, at p. 38.

The principle has been adopted in Mississippi. ''We think it is well settled in other states that a person in the employ of one person or company whose services are loaned by his employer to another company or person becomes, for the purpose of the work assigned to him, the servant of the latter company, that is to say, the

company for whom the work is performed. In Westover v. Hoover, 88 Neb. 201, 129 N. W. 285, that court said:

" 'A person who is in the general employment of one person may be temporarily in the service of another with respect to a particular transaction or piece of work so that the relation of master and servant arises between them, even though the general employer may have no interest in the special work. '

"In the case of Wiest v. Coal Creek R. Co., 42 Wash. 176, 84 Pac. 725, the court said:

" 'Where an employer lends his employee to a third person for a particular employment, the employee, for anything done in the particular employment, is the employee of the third person, though he remains the general employee of the employer. * * *' " Sawmill Construction Company v. Bright, 116 Miss. 491, 77 So. 316. See also Mrs. Dorthula Mitchell v. Eagle Motor Lines, Inc., et al., 228 Miss. 214, 87 So. 2d 466.

The burden was upon Runnels to show that Kelly was the servant of Burdine. He failed to meet that burden.

Affirmed.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.