Rowell Equipment Company et al. *v.* McMullan et al.

No. 41958 October 23, 1961 133 So. 2d 631

*Dudley W. Conner,* Hattiesburg, for appellant.

846

*E. P. Connolly*, Laurel; *Robert H. McFarland*, Bay Springs, for appellee Clarence E. McMullan.

*Daniel, Coker & Horton,* Jackson, for appellee Gulf Oil Corporation.

ARRINGTON, J.

Rowell Equipment Company, Inc., and the New Amsterdam Casualty Company, its insurance carrier, appeal from a judgment of the Circuit Court of Wayne County affirming the award of the Workmen's Compensation Commission which affirmed the order of the attorney-referee dismissing Gulf Oil Corporation as a party defendant, and awarding Clarence E. McMullan, claimant-appellee, compensation benefits against the appellants.

The appellants assign as error and argue that the court erred in not finding from the facts and law that the appellee, Clarence E. McMullan, was a "loaned servant" at the time of the accident and was a servant of Gulf Oil Corporation.

Thus the sole question presented on this appeal is: Whose employee was claimant-appellee at the time of his injury? The awarding of compensation benefits is not questioned.

Rowell Equipment Company and Gulf Oil Corporation entered into a contract on March 1, 1957, whereby Rowell agreed to perform general repairs on cars, trucks, engines, etc. The contract provided that "the jobs to be performed will be indicated by Transportation Tickets, Field Work Orders and Purchase Orders of Gulf, duly signed by an authorized representative of Gulf and directed to you as 'Contractor'."

Other pertinent provisions of the contract are as follows: "Gulf will pay Contractor for jobs performed or services rendered hereunder in accordance with schedule of prices attached hereto and made a part of this contract. It is understood that the rates and prices set forth in the attached schedule of prices are subject to change by either party upon ten (10) days written notice to the other party. The rates to be paid to Contractor by Gulf for the actual performance of the work shall be in lieu of any charges for materials or supplies furnished by Contractor for use in the work and any charges for transportation of tools, equipment and labor or time required to transport tools, equipment and labor to and from the job, unless otherwise specified in the schedule of prices.

"Contractor shall at Contractor's expense furnish foreman, if required, and all labor, equipment, machinery, tools and supplies necessary to perform all jobs and services hereunder in a workmanlike and diligent manner. As an independent contractor, you also agree and obligate yourself to comply with all laws, rules and regulations, Federal, State and Municipal, which now are, or in the future may be, applicable to your business, equipment and employees engaged in your operations in any manner connected with your performance hereunder."

The contract also provided that Rowell would carry and keep in force workmen's compensation insurance and public liability insurance.

The claimant was injured on July 12, 1958, while working on a Gulf oil well which was being repaired by claimant as an employee of Rowell. The work was being performed under a work order from Gulf directed to Rowell, directing Rowell to repair the oil well machinery. Rowell, through its compensation carrier, voluntarily paid claimant compensation benefits temporarily, together with medical benefits. A controversy arose over permanent partial benefits, resulting in a hearing and the order directing Rowell and its compensation carrier to pay such permanent partial benefits.

The claimant was employed by Rowell in the spring of 1957, and worked in Rowell's mechanical repair shop in Heidelberg, Mississippi. At the time of claimant's injury, Rowell had moved its repair shop to Laurel, Mississippi. After Rowell moved its business to Laurel, claimant continued to live at Heidelberg with instructions to report to the representative of Gulf at Heidelberg, where Gulf had numerous oil wells in operation, and to perform such work as Gulf gave orders for in that area. Gulf gave claimant work orders from time to time as to what machinery needed repair and claimant would then make such repairs. After such repairs were done, claimant would notify Rowell of the time and materials consumed so that Rowell could bill Gulf in accordance with the contract. The representatives of Gulf did not tell claimant how to do the repair jobs or direct the details in so doing. Gulf was interested in the results only. Rowell hired claimant, paid him his wages, and had the sole right to discharge him from their employ. Rowell paid social security and withheld income taxes in respect to claimant's wages. The only control Gulf had in respect to firing claimant was that Gulf could have requested Rowell to replace claimant if his work was not satisfactory, but Gulf could not have fired claimant from Rowell's employ. All equipment used by claimant in performing work for Gulf under the con-

tract was furnished by Rowell except hand tools which claimant owned. Claimant was carried as an employee of Rowell in estimating the premium for workmen's compensation insurance carried by Rowell.

Rowell and its compensation insurance carrier contend that the Commission was required, as a matter of law, to hold that claimant was an employee of Gulf. They argue claimant was a loaned servant of Gulf.

Section 48.10, Vol. 1, Larson's Workmen's Compensation Law, is, in part, as follows:

"Although the lent-servant doctrine is a familiar one at common law, and has produced some of the most venerated and most intricate cases in the law of master and servant, it is necessary to stress once more that the workmen's compensation lent-employee problem is different in one significant respect: there can be no compensation liability in the absence of a contract of hire between the employee and the borrowing employer. For vicarious liability purposes, the spotlight was entirely on the two employers—what they agreed, how they divided control, how they shared payment, and whose work, as between themselves, was being done. No one paid much attention to the employee or cared whether he had consented to the transfer of his allegiance, since, after all, his rights were not usually as a practical matter involved in the suit. In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: did he make a contract of hire with the special employer? If this question cannot be answered 'yes', the investigation is closed, and there is no need to go on into tests of relative control and the like. . . . . . .

"The only presumption is the continuance of the general employment which is taken for granted as the beginning point of any lent-employee problem. To overcome this presumption, it is not unreasonable to insist upon a clear demonstration that a new temporary em-

ployer has been substituted for the old, which demonstration should include a showing that a contract was made between the special employer and the employee, proof that the work being done was essentially that of the special employer, and proof that the special employer assumed the right to control the details of the work."

In Clark v. Luther McGill, Inc., (Miss.), 127 So. 2d 858, this Court, in discussing the loaned servant question, said:

"A loaned servant does not become the employee of the special employer unless a contract of hire is entered into between the employee and the borrowing employer. This contract may be express, or implied from all the facts and circumstances; but there must be consent thereto on the part of the employee, and this consent may be implied. The right to control the employee has been one of the dominant factors in all the cases, but the ultimate right to control should not be confused with immediate control, for it is the reserved right of control rather than its actual exercise that furnishes the true test of relationship; and he is master who has the supreme choice, control and direction of the servant and whose will the servant represents in the ultimate results and in all its details, and the fact that the borrower gives information and directions to the servant as to the details of the work or the manner of doing it does not make the general servant of the employer the servant of the borrower. Southern Cement Co. v. Patterson, supra." (Ala., 122 So. 2d 386).

 █ Such control as Gulf had over claimant was immediate control in directing claimant the place where the work was to be performed and what machinery was to be repaired, but Rowell had the ultimate right to control him. Rowell had the supreme choice, control and direction of claimant both as to ultimate results and all its details. The information and directions given claimant by Gulf did not make him its employee.

The motion of Gulf Oil Corporation, appellee, to dismiss the appeal as to it is overruled.

The motion of claimant for penalties is overruled. The claimant is entitled to interest at the rate of six percent per annum on each installment of compensation from its due date until paid; and is also entitled to five percent statutory damages on all payments due at the time the judgment of affirmance by this Court is entered.

We are of the opinion that the Commission correctly held that claimant was the servant of Rowell, and it follows that the judgment of the Circuit Court of Wayne County is affirmed and the cause remanded for the enforcement of the award made by the Commission.

Affirmed and remanded.

*McGehee, C.J.*, and *Kyle, Ethridge* and *Rodgers, JJ.*, concur.