660 So.2d 1278 (1995)
NORTHERN ELECTRIC COMPANY and Toby Minter
v.
Bertis PHILLIPS.
No. 91-CA-00470-SCT.
Supreme Court of Mississippi.
August 3, 1995.
Rehearing Denied September 28, 1996.
Eve Gable, Bryan Nelson Randolph & Weathers, Hattiesburg, Michael K. Randolph, Bryan Nelson Firm, Hattiesburg, for appellant.
Michael B. McMahan, McMahan McMahan & Brinkley, Hattiesburg, for appellee.
Rebecca Lee Wiggs, Kenneth E. Milam, Watkins & Eager, Jackson, for amicus curiae.
En Banc.
*1279 BANKS, Justice, for the Court:
In the present appeal, we are asked to determine whether employees covered for workers' compensation by the temporary employment agency are barred by the exclusive remedy provisions of the workers' compensation act from recovery against the entity for which the services are actually performed. We answer the question in the affirmative, reverse the judgment and render.

I.
In March of 1989, Kelly Services in Hattiesburg, Mississippi, employed Phillips to work with Northern Electric Company (NECO) temporarily as a maintenance helper and to perform other assigned tasks. Six weeks later, on April 20, 1989, Phillips sustained severe injuries when Minter, a coemployee, drove a forklift into the table and caused a roller bar to fall from the table and onto Phillips' foot. Phillips filed and received workers' compensation benefits from Transportation Insurance Company, a CNA member company (CNA) through Kelly. Legal proceedings began on July 5, 1990, when Phillips filed a complaint in the Forrest County Circuit Court alleging that NECO's and Minter's negligence resulted in his injuries.
On March 14, 1991, NECO filed its motion for summary judgment asserting, inter alia, that there is no genuine issue of material fact and NECO is entitled to a judgment as a matter of law. NECO alleged that at the time of the accident, the plaintiff was its "loaned" or "borrowed servant," or "special employee." On March 14, 1991, Phillips filed his first motion in limine to restrain NECO from mentioning, referring to or commenting on, inter alia, 1) any suggestion or reference that any of the medical bills were paid by workers' compensation or any other insurance; and 2) any suggestion or reference that workers' compensation paid weekly disability benefits to plaintiff or paid any type of workers' compensation settlement to plaintiff. Phillips also filed his second motion in limine on March 14, 1991, and requested that the court order NECO and its agents to give any and all testimony concerning insurance contracts outside the presence of the jury.
On March 15, 1991, Phillips filed his motion to strike defendant's motion for summary judgment since the 1) case was set for trial on Monday, March 18, 1991, pursuant to an agreed order that was entered on October 16, 1990; 2) defendant's motion for summary judgment was filed on March 14, 1991; and 3) MRCP Rule 56(c) required that motions for summary judgment be served at least 10 days before the time fixed for the hearing. Phillips additionally asserted that since defendants' Motion for Summary Judgment has been filed only four days prior to trial, and in violation of MRCP Rule 56(c), it should be denied.
Phillips also filed a motion to strike NECO's second and fourth defenses which showed that Phillips' exclusive remedy for the injury was workers' compensation benefits pursuant to the Mississippi Workers' Compensation Act. In this motion, Phillips asserted that NECO and Kelly entered into a contract which evidenced the agreement of the parties and the responsibilities to be borne by each. Phillips stated that by the specific, clear, and concise language of the contract, NECO agreed to be fully responsible for all bodily injury claims of Kelly's employees. Additionally, Phillips asserted that "[b]y agreement between the parties, Kelly assumed and fulfilled all legal obligations for workers' compensation. Therefore, NECO had no legal liability for workers' compensation to Kelly employees."
On March 18, 1991, NECO responded to Phillips' first motion in limine by asserting that NECO 1) "should be entitled to introduce evidence of and to reference medical bills paid by workers' compensation to the plaintiff, as such evidence is material to its second and fourth defenses"; and 2) defendants were entitled to show that they secured such payment of weekly disability benefits to the plaintiff as required by the Workers' Compensation Act. On March 18, 1991, NECO also responded to Phillips' second motion in limine by asserting that NECO would show that "there are certain insurance contracts material to the presentation of defendants' proof of these defenses, including, but not limited to defendant's entitlement to show that ... [NECO] did in fact "secure *1280 payment of compensation" as required by the Workers' Compensation Act for and on behalf of Phillips."
During the pre-trial hearing on March 18, 1991, the trial court, finding that the case was controlled by the contract agreement between NECO and Kelly, overruled NECO's motion for summary judgment as untimely and sustained Phillips' motions to strike and his motions in limine.

II.
Phillips claimed that on the morning of April 20, 1989, he sustained severe and permanent injuries to his foot, which caused him to spend money for medical treatment, hospitalization, prescription drugs, and related medical expenses. He averred that as a proximate result of the defendants' negligence, he sustained a loss of wage-earning capacity. Additionally, he averred that his injuries were the direct and proximate result of NECO's and Minter's acts, and sought damages in the aggregate amount of $500,000. NECO answered that Phillips' sole and exclusive remedy for the injury claimed is workers' compensation benefits since Phillips was a "loaned or borrowed servant" at the time of the injury, and/or engaged in the "dual employment" of Kelly and NECO at the time of the accident which granted NECO immunity at law.
On the day of the trial, March 18, 1991, NECO proffered witnesses in response to the court's consideration of Phillips' motion in limine to exclude reference to the borrowed servant or loaned servant evidence and the workers' compensation. NECO began by calling Bertis Phillips, who testified that when he went to work with Kelly Temporary Services he knew that it was temporary services agency. He testified that Kelly sent him to the maintenance department and that he was working in other capacities, other than as a maintenance helper, including painting and cleaning offices, stripping floors and painting the machines. In addition, Phillips stated that he received his orders and work assignment from the assistant supervisor for the maintenance department.
The manager of Kelly Services, Judy Platt, testified that Kelly charges the customer a bill rate that is greater than the wages paid to the Kelly person. "It includes the wage that we pay the workers, workers' compensation premiums, unemployment compensation taxes, social security taxes, withholding taxes for state and federal income, things like that." In addition, Platt stated that the service agreement on the back of the invoice states that the employees are sent by Kelly out to the customer, and are to be at the customer's direction and control.
On re-direct, Platt answered that "7.5 percent is for FICA; 1.6 percent for state unemployment; .8 percent federal unemployment; 7.7 percent workers' compensation; 1.5 percent benefit; 20.4 per cent is overhead, and that included branch level of spending, such as rent, electricity, full-time staff, 8.0 general and administrative, including corporate expenses like the time card processing, the pay check, accounts receivable, the whole process; and 2.5 per cent profit." Platt also stated that "the 1.5 benefit package is for vacation time, holiday pay, anything like that we offer to our employees."
David McCoy, Director of Human Resources at NECO, answered in the affirmative when questioned on whether the persons that NECO hires from Kelly are placed in the same departments as its other regularly employed people, do basically the same jobs, and are supervised by NECO's personnel. He answered "no" when asked whether Kelly supervisors were on the premises, and when questioned whether Kelly workers performed independent services. He also answered in the affirmative when asked "Was it your understanding that what you paid Kelly, in essence, paid [the workers' compensation] premium?"
At the end of the proffer of all witnesses and cross-examination by the plaintiff, the judge stated that:
The court would at least be consistent in its ruling, would stand by the same ruling as enunciated in chambers. That being, this court is of the opinion that the contract would rule in this particular matter, and that being the case, I am going to sustain the motion in limine. And I presume also strike the defenses. The way *1281 these things are formed, it's kind of hard to do because you've got some of it in the Motion for Summary, which I might enunciate into the record, it was filed but was not timely filed. It was brought over here two days before trial. So that will be the ruling of the court.
At the conclusion of Phillips' evidence, the court denied NECO's motion for a directed verdict. After hearing the evidence relative to the negligence claim, the jury returned a verdict in favor of the plaintiff. NECO filed a motion for a Judgment Notwithstanding the Verdict, or in the Alternative for a New Trial. After these post-trial motions were denied, this appeal followed.

III.
We review de novo the record on appeal from a grant of a motion for summary judgment. Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63 (Miss. 1988). In Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983), we interpreted Rule 56 and the standards that the trial courts should use in considering a motion for summary judgment. We explained that
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
Brown, 444 So.2d at 363. See also Lovett v. Anderson, 573 So.2d 758, 760 (Miss. 1990); Pearl River Cty. Bd. v. South East Collections, 459 So.2d 783, 785 (Miss. 1984).
We also conduct a de novo review of a motion for directed verdict. If we find that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted. Pittman v. Home Indem. Co., 411 So.2d 87, 89 (Miss. 1982) (citing Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975)).
NECO asks that we address whether the trial court erred when it denied its motion for summary judgment and later its motion for a directed verdict or in the alternative, judgment notwithstanding the verdict. NECO argues that Phillips was a loaned or borrowed servant of NECO at the time of his injuries and that therefore, Phillips' exclusive remedy is pursuant to the Mississippi Workers' Compensation Act. Section 71-3-9 of the Mississippi Code of 1972, provides that "the liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative... ." Miss. Code Ann. 1972 § 71-3-9. Accordingly, if Phillips is a loaned or borrowed employee, or if a dual employment existed between NECO and Kelly, the only available remedy against either NECO or Kelly is workers' compensation and Phillips would be barred from bringing a common-law negligence action against NECO and/or Minter.
Our earliest relevant pronouncement in thus area is found in Runnels v. Burdine, 234 Miss. 272, 276, 106 So.2d 49 (1958). There, we delineated the standard employed in such cases. "Indeed, as a general proposition, if one person lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom he had been lent, although he remains the general servant of the person who lent him." Runnels, 234 Miss. at 276, 106 So.2d at 51. "The fact that a person is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may be held liable for his acts." Id. We noted that "it is well settled in other states that a person in the employ of one person or company whose services are loaned by his employer to another company or person becomes, for the purpose of the work assigned to him, the servant of the latter company, that is to say, the company for whom the work is performed." Id. at 276-77, 106 So.2d at 51. We have reaffirmed our position in Ray v. Babcock and Wilcox Company, Inc., 388 So.2d 166 (Miss. 1980); Biggart v. Texas Eastern Transmission Corp., 235 So.2d 443 (Miss. *1282 1970); See also, Lott v. Moss Point Marine Inc., 785 F. Supp. 600 (S.D.Miss. 1991).
In the instant case, as in Runnels, even though Phillips was not NECO's "actual" employee, Phillips was on loan on a temporary basis and was subject to its control. Phillips received supervision and work assignments from NECO supervisors; although Phillips maintains that he was Kelly's employee, he admitted that he did not work at the Kelly's office.
Other state courts have addressed the application of the exclusivity provision of workers' compensation coverage to the employee of a temporary employer by virtue of an implied contract. See Denison v. Haeber Roofing, Co., 767 S.W.2d 862, 864 (Tex App. 1989) (Summary judgment is appropriate under the "borrowed servant" doctrine even though the injured temporary services worker received workers' compensation benefits from the temporary employment agency rather than through appellee, who also carried workers' compensation insurance); Stephens v. Oates, 189 Ga. App. 6, 374 S.E.2d 821, 822 (1988) (same); Virginia Polytechnic and State University, and Charter Oak Fire Ins. v. Frye t/a Home Improvement, et al., 6 Va. App. 589, 371 S.E.2d 34, 37-38 (1988) (Where an employer is a "special" employer, it is liable under the Workers' Compensation Act); Ivey v. Merchant, 502 So.2d 93 (Fla. 1987) citing Booher v. Pepperidge Farm, Inc., 468 So.2d 985 (Fla. 1985) ("Where a general employer in the business of providing temporary help provides compensation coverage to an employee while he is on assignment working for another employer, then that employee is barred from suing his special employer for on-the-job injuries"); Whitehead v. Safway Steel Products, Inc., 304 Md. 67, 497 A.2d 803 (1985) (Whether a person who is employed by a temporary services agency is also an employee of the company to which the worker is provisionally assigned is a question of law for the trial court to decide).

IV.
Summary judgment is appropriate where a temporary employment agency assigns an employee to another employer and the employee performs the normal work of the second employer and is controlled and supervised by that employer. In Mississippi, one may be employed by more than one employer and both employers gain immunity from common-law negligence actions. Here pursuant to the Mississippi Workers' Compensation Act, Phillips' exclusive remedy was workers' compensation benefits. Although the court correctly denied the summary judgment as untimely filed, it erred in granting Phillip's motion to strike defenses because it was also untimely and because it was meritless. The court should have granted the directed verdict or a judgment notwithstanding the verdict in favor of NECO.
We therefore reverse the judgment of the circuit court and render judgment in favor of NECO.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, JAMES L. ROBERTS Jr. and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.
McRAE, Justice, dissenting:
The majority's reversal of Bertis Phillips' common law tort award against Northern Electric Company and Toby Minter (hereinafter collectively referred to as "NECO") effectively insulates NECO from any liability and precludes Kelly Services from asserting its statutory subrogation rights against NECO for its negligence, and as a result, obviously will cause an increase in Kelly Services' workers' compensation premiums. Further, until this case, there has been no Mississippi Supreme Court authority finding "dual employment" by a labor service broker and its customer for workers' compensation purposes. As a result, Kelly Services pays the bill for a potentially higher premium and gives up its right to subrogation while NECO enjoys a new found freedom from liability without paying a dime! Accordingly, I dissent.
Miss. Code Ann. § 71-3-71 (1972) allows an employee and his employer to commence an action against any other party for such injuries *1283 as the employee might receive, specifically providing:
The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in any such action or may intervene therein. If such employer or insurer join in such action, they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action (after deducting the reasonable costs of collection) as hereinafter provided.
Miss. Code Ann. § 71-3-71 (1972). Kelly Services remains responsible for all of Phillips' medical and compensation expenses, regardless of whether Phillips brings an action against NECO. However, according to our subrogation statute, if Phillips did recover against NECO for its negligence, Kelly Services could join the action and be reimbursed for the amount it already paid Phillips. Under the majority's opinion, Kelly is now precluded from pursuing any action for reimbursement of workers' compensation benefits paid. I question whether the majority would have held as it did if Kelly Services had brought the suit against NECO for repayment. Kelly is entitled under § 71-3-71 to collect from NECO for its negligence, and it is unjust for the majority to deny the remedies provided at law for this exact situation, in contravention of the statute.
NECO appealed to this Court, asking that we allow it to avoid liability while escaping all of the normal obligations and duties of the employer-employee relationship. The majority neglects to mention some of the more salient facts of this case: NECO was not responsible for payment of Phillips' wages, nor did it pay unemployment taxes, social security benefits or workers' compensation insurance premiums for Phillips. NECO did not provide medical insurance, vacation leave, funeral leave pay or jury duty pay to Kelly employees such as Phillips although it did provide these benefits to its own employees. Essentially, NECO received all of the benefits from the work of Kelly Services employees without assuming any of the obligations an employer is usually required to undertake.
NECO does not deny its negligence in causing the accident and Phillips' resulting injuries. However, NECO does argue that it is simply not liable for its negligent actions since Phillips' exclusive remedy was compensation payment, Miss. Code Ann. § 71-3-9 (1972), which Kelly had already paid. Contrary to the majority opinion, Phillips was not a "loaned" or "borrowed" or "special" servant; rather Phillips was an employee of an independent subcontractor since NECO never had ultimate control over Phillips.
For all practical purposes and without even mentioning the case, the majority overrules our decision in Nash v. Damson Oil Corp., 480 So.2d 1095 (Miss. 1985). In what appears to be little more than a resultsoriented opinion, the majority presents us with no real basis for its position. We are merely directed to our "earliest relevant pronouncement" in Runnels v. Burdine, 234 Miss. 272, 276, 106 So.2d 49 (1968), with no explanation of its relevance, as well as to a sampling of distinguishable cases from other jurisdictions. With this slim thread, we tie both the hands and the pocketbooks of Kelly Services and other temporary services providers and weave a curtain of immunity around NECO and others who utilize the services of temporary employees.
In Nash, we held that the employee of an independent subcontractor was not precluded from bringing a common law tort action against the contractor even though he had collected workers' compensation benefits from an independent subcontractor. Nash, 480 So.2d at 1098. Damson Oil Corporation would have prevailed had it shown it was a "contractor" who was an "employer" within the meaning of Miss. Code Ann. §§ 71-3-7 and 71-3-9 (1972). Id. This case was predicated upon § 71-3-9, which provides:
The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee ...
*1284 Trigger Contractors, Inc., Gary Allen Nash's employer, contracted with Damson Oil to service and repair its oil and gas wells. Id. at 1097. Nash therefore was not directly employed by Damson Oil. He was paid by Trigger, and it was Trigger who provided workers' compensation insurance as well as all other required benefits. Id. at 1098. Damson Oil attempted to use Trigger's employer status based on the following language from § 71-3-7:
In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.
This Court concluded that Damson Oil was not the sort of "contractor" anticipated by the pertinent statutes and thus not a statutory employer; therefore, Nash was able to proceed to trial. We held:
Without question Damson is a contractor in a generic sense. Damson had a contractual relationship with the owners of the land imposing various duties and obligations upon each. Damson is also a contractor in the sense that it has a contract with Trigger imposing obligations and duties upon each. The operative point is that Damson's interest, use and activities with respect to the premises are wholly different in nature from those of one ordinarily considered a general or prime contractor ... Therefore, Damson is not the sort of "contractor" within the meaning and contemplation of Section 71-3-7.
Nash, 480 So.2d at 1100. See Falls v. Mississippi Power & Light Co., 477 So.2d 254 (Miss. 1985). Because the pertinent statutes did not impose any duty upon Damson to secure workers' compensation insurance, we concluded that Damson should not be entitled to enjoy any of the benefits of the Act. Nash, 480 So.2d at 1100. The same can be said for the case at hand. True, NECO contracted with Kelly Services with each having obligations and duties. However, NECO's interests are very much different from the ordinary prime contractor. NECO and Kelly's conditions and circumstances are more akin to that of Trigger and Damson Oil as both dealt with service agreements. NECO is not the type of contractor the Act contemplated, and because NECO had no duty to secure workers' compensation insurance, it should not be able to reap the benefits of the Act.
In Rowell Equipment Co. v. McMullan, 241 Miss. 845, 133 So.2d 631 (1961), the Supreme Court of Mississippi entertained the question of whether the claimant in question was a "loaned" servant at the time of the accident or rather an employee of an independent contractor. The claimant was employed by Rowell Equipment Company who contracted with Gulf Oil Corporation to perform general repair on its machinery. The injury in question occurred while claimant was working on a Gulf oil well. Rowell, 241 Miss. at 851, 133 So.2d at 633. It was not disputed that Gulf supervised claimant and gave orders as to which machinery needed repair. Rowell, on the other hand, hired claimant, paid him wages, had the sole authority to discharge him, paid social security taxes and withheld claimant's income taxes. As in the case sub judice, Gulf Oil could only request that the claimant no longer work on its machinery if it were not satisfied with his work. Likewise, the claimant was considered an employee of Rowell when figuring the premium for workers' compensation insurance. Id. In holding that the claimant was an employee of an independent contractor rather than a "loaned" servant, we stated:
Such control as Gulf had over claimant was immediate control in directing claimant the place where the work was to be performed and what machinery was to be repaired, but Rowell had the ultimate right to control him. Rowell had the supreme choice, control and direction of claimant both as to ultimate results and all its details. The information and directions given claimant by Gulf did not make him its employee.
Rowell, 241 Miss. at 853, 133 So.2d at 634.
The same is true for Bertis Phillips. Kelly Services remained Phillips' employer. In fact, the service agreement provided that if NECO was not satisfied with the assigned Kelly employee, Kelly would furnish a replacement as soon as possible. NECO never *1285 possessed the ultimate power to hire or fire a Kelly employee; it only had the immediate control and supervision to make sure the Kelly employee performed the services ordered.
In Clark v. Luther McGill, Inc., 240 Miss. 509, 127 So.2d 858 (1961), this Court, in discussing the issue of a "loaned" servant, provided:
The right to control the employee has been one of the dominant factors in all the cases, but the ultimate right to control should not be confused with immediate control, for it is the reserved right of control rather than its actual exercise that furnished the true test of relationship; and he is master who has the supreme choice, control and direction of the servant and whose will the servant represents in the ultimate results and in all its details, and the fact that the borrower gives information and directions to the servant as to the details of the work or the manner of doing it does not make the general servant of the employer the servant of the borrower.
Clark, 240 Miss. at 519, 127 So.2d at 862 (emphasis added).
Until today, no Mississippi case has held that just because someone exercises control over another, he, as a matter of law, is the employer. The majority's position is illogical. The majority states that NECO possessed all control over Phillips in the performance of his job. If this is so, Kelly could not have exercised control in this respect. Therefore, Phillips, as a matter of law, could not have been Kelly's employee; yet, the majority states that Phillips, at all times, was Kelly's employee.
The majority opinion erroneously allows NECO to reap the benefits of the work of Kelly employees although NECO is not required to provide workers' compensation, while at the same time obstructing Kelly Services from asserting its lawful subrogation rights against NECO. Further, it allows NECO to claim immunity despite its liability insurance coverage. In sovereign immunity cases, we have found that immunity is waived to the extent of the liability coverage carried. See Churchill v. Pearl River Basin Development District, 619 So.2d 900, 905-06 (Miss. 1993). Why then should the insurance carrier which has contracted to cover third party claims against a private entity be protected? Accordingly, I dissent.
SULLIVAN, J., joins this opinion.