GRIFFIS, J.,
for the Court.
¶ 1. Bordman C. Humphrey appeals judgment granting summary judgment in favor of Joe A. Herrin. Finding the chancellor to be in error, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
¶ 2. The facts of this case are relatively straightforward, but the procedural history is complex and, at times, confusing. We present a detailed discussion of both.
¶ 3. Athough the record does not indicate his exact age, Bordman Humphrey is an elderly man who owned real property in Pearl River County. Pursuant to a divorce in the State of Texas, Bordman jointly owned at least two of four separate tracts of property with his former wife Ruby Humphrey.
¶ 4. On January 23, 1991, Ruby purportedly executed a deed conveying her interest in the property to Jeanette Humphrey Smith, one of Bordman’s and Ruby’s daughters. On March 27, 1992, Bordman purportedly executed a deed conveying his interest in certain real property to Jeanette.
¶ 5. On September 10, 1993, Bordman commenced a lawsuit against Jeanette asking the court to void the deeds executed by both Bordman and Ruby on the grounds of fraud and undue influence. Bordman alleged that Jeanette fraudulently procured their signature on the deeds. On January 4 and May 17,1994, Bordman filed amendments to the complaint to assert claims for undue influence, fraud in the procurement and failure of consideration.
¶ 6. According to the deeds attached to the complaints, we are not able to determine whether there were two or four separate tracts of property. The deeds from Ruby to Jeanette described the property to be conveyed as the property that was jointly owned by Ruby and Bordman, which had been partitioned in their divorce proceeding. The first tract was described by reference to monument, and the second tract was described by a combination of metes and bounds with description by ref *373 erence to a monument. The deeds from Bordman to Jeanette describing the property to be conveyed were described by metes and bounds descriptions indicating the section, township and range. For our consideration, when necessary, we identify the properties described in Ruby’s deeds as tracts 1 and 2, which appear to be jointly owned by Bordman and Ruby, and the properties described by Bordman’s deeds as tracts 3 and 4, which appear to be owned solely by Bordman.
¶ 7. On April 29, 1994, the chancellor appointed Erik Lowery as a guardian ad litem to determine Bordman’s competency and present ability to understand the proceedings. On May 23, 1994, Lowery opined that Bordman was a capable, able litigant who had a firm grasp of the issues before the court. By order of the court dated November 15, 1994, Lowery was allowed to withdraw and relieved of any further duties as guardian ad litem.
¶ 8. On June 24, 1994, Bordman’s original counsel was allowed to withdraw. In subsequent pleadings, Frank Montague entered an appearance as counsel for Bordman. We find no pleading or order allowing Montague to withdraw as counsel for Bordman.
¶ 9. On October 22,1994, Jeanette filed a motion to dismiss any and all proceedings brought by Bordman, for and on behalf of Ruby. Jeanette’s motion asserted that Bordman lacked standing to assert Ruby’s claims. Bordman responded by asserting that his standing was by virtue of his inheritance through Ruby’s will [1].
¶ 10. On November 15, 1994, Chancellor Howard Patterson, Jr., entered an order on the motion to dismiss that held Bordman lacked standing to assert Ruby’s claims and that Bordman had shown no legal entitlement to an interest in the property. The chancellor ruled that the claims to set aside the conveyance of Ruby to Jeanette were “dismissed without prejudice, and subject to reinstatement by request if the alleged will of Ruby Humphrey, deceased, dated January 16,1983, is ruled valid, in Cause No. 66123 in the County Court of Jefferson County, Texas.” The chancellor’s order concluded by holding in abeyance all other matters. Thus, the chancellor dismissed Bordman’s claim against Jeanette for Ruby’s interest in tracts 1 and 2 and held in abeyance Bord-man’s claims against Jeanette for his interest in tracts 3 and 4.
¶ 11. Several miscellaneous pleadings were filed during 1995. Among the pleadings were several motions and orders allowing the guardian and various counsel to withdraw or be substituted.
¶ 12. 'After approximately two more years of inactivity, on September 17, 1997, a notice of dismissal with prejudice was filed. The record does not indicate who prepared or filed the notice. The notice of dismissal was a voluntary dismissal, pursuant to Rule 41(a)(l)(ii) of the Mississippi Rules of Civil Procedure., The notice was signed by Bordman, pro se, and Jeanette’s attorney. The notice was not signed by Montague or any other attorney representing Bordman.
¶ 13. On March 4, 1999, Bordman filed his third amended complaint against Jeanette. The third amended complaint added several other defendants who had obtained an interest in the property, namely Joe A. Herrin d/b/a Herrin Timber Company, Lamar Bank, Bruce S. Rawls and K. Elaine Rawls. Just as with the previous complaints, the third' amended complaint asserted claims ‘for fraud and undue influence. The complaint alleged that Bordman’s affairs were now under a con- *374 servatorship and that the will of Ruby Humphrey had never been validated by the Texas court, because it had been settled and the estate closed without addressing that issue. The complaint asked the court to void and set aside the deeds conveying the property to Jeanette, the deeds from Jeanette to Herrin, the deed of trust by Herrin for the benefit of the Lamar Bank, and the deed from Herrin to the Rawls.
¶ 14. The third amended complaint was signed by Nadine Stevens, another daughter of Bordman and Ruby, as conservator of Bordman. Stevens was now represented by William H. Pettey, Jr. On March 10, 1999, Stevens filed a motion to file a third amended complaint requesting leave of court to file the third amended complaint.
¶ 15. On August 19, 1999, the Lamar Bank was dismissed without prejudice.
¶ 16. On November 2, 1999, the clerk entered a default against Jeanette. A motion for default judgment was filed, but Herrin and the Rawls opposed the motion. There is no record that the motion was heard or decided by the chancellor.
¶ 17. On February 27, 2002, Herrin filed a motion for summary judgment, which was subsequently amended. Herrin asserted that the prior dismissals prohibited the refiling of this claim against Jeanette and the new defendants. In response, Bordman’s conservator asserted that the notice of dismissal was void because Bord-man was incompetent, suffering from senile dementia, at the time it was executed. Bordman’s conservator attached an affidavit from Bordman’s treating physician that opined that Bordman did not possess the requisite mental capacity in November of 1997 to understand his actions in executing a legal document, such as the notice of dismissal.
¶ 18. On January 30, 2003, Chancellor James H.C. Thomas, Jr., granted Herrin’s motion for summary judgment. In the judgment, the chancellor held:
A history of this action reveals that it . was initially filed on September 10, 1993 and, after being reduce [sic] to issue, dismissed on two occasions. The first dismissal was by Order of this Court on November 15, 1994, without prejudice subject to reinstatement if an alleged will of Ruby Humphrey, deceased, is ruled valid in Cause No. 66123 in the County Court of Jefferson County, Texas. That order followed the appointment by the Court, on April 29, 1994, of a guardian ad litem for Plaintiff and his report on May 23, 1994 that the Plaintiff was competent to prosecute the action sub judice with his counsel. Thereafter, pursuant to Rule 41(a)(i)(ii) of the Mississippi Rules of Civil Procedure, the matter sub judice was voluntarily dismissed by Plaintiff filing a Notice of Dismissal dated September 17, 1997 which was agreed to by counsel for the Defendant. A Motion To File Third Amended Complaint was then filed on March 10, 1999 on behalf of Plaintiff alleging him to be under a conservator-ship and a Third Amended Complaint was filed on March 4, 1999 without leave of the Court being entered. That Complaint states that the will of Ruby Humphrey has never been validated by the Texas Court based on that cause having been settled and the estate closed without addressing that issue.
The Court finds the Motion For Summary Judgment, as amended, should be granted in keeping with the prior order of this Court dismissing the action absent the requisite showing the condition of the Order has been met, and the actions of the Plaintiff in effecting a dismissal by himself by complying with Rule 41(a)(i)(ii), MRCP, which may be *375 done without an order of the Court when the appropriate notice of dismissal is filed, as was done in this case.
Further, the competence of Plaintiff has previously been address[ed] in this matter, and, while a change in his status may not be clear between the Order of November 15, 1994 and the Notice of Dismissal of September 19, 1997, it is clear that a conservator could not take legal action on behalf of his ward without prior court approval. See In the Matter of the Last Will and Testament of and Estate of Thomas D. Mingo v. Mingo, 748 So.2d 433, (Miss.App.1999). The Third Amended Complaint is dismissed.
Bordman appeals this judgment.
STANDARD OF REVIEW
¶ 19. “The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.” Aetna Cas. and Sur. Co. v. Berry, 669 So.2d 56, 70 (Miss.1996) (citing Mantachie Natural Gas v. Miss. Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992)). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997); Northern Elec. Co. v. Phillips, 660 So.2d 1278, 1281 (Miss.1995). The burden of showing that no genuine issue of material fact exists lies with the moving party, and we give the benefit of every reasonable doubt to the party against whom summary judgment is sought. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990).
ANALYSIS
¶ 20. Our de novo review of the chancellor’s judgment indicates that the chancellor considered four applicable legal concepts but decided the case based on the order of dismissal and the notice of dismissal. We will address each of the issues considered by the chancellor.
¶21. First, the chancellor determined that the summary judgment should be “granted in keeping with the prior order of this Court dismissing the action absent the requisite showing the condition of the Order has been met....” The November 15, 1994 order of dismissal simply does not support the chancellor’s decision to dismiss all of Bordman’s claims. According to the order, Chancellor Patterson ruled that Bordman lacked standing to pursue Ruby’s claims. The order dismissed, subject to reinstatement, only the claims Bordman asserted against Jeanette that arose out of the conveyance of Ruby’s interest in the property. Bordman’s claims against Jeanette that arose out of his purported conveyance of his interest in the property remained separate and viable, but held in abeyance until further order of the court. Accordingly, we conclude that the chancellor erred as a matter of law in finding that the November 15, 1994 order dismissed all of Bordman’s claims against Jeanette.
¶ 22. Second, the chancellor ruled that the September 17, 1997 notice of dismissal with prejudice dismissed all of Bordman’s claims. In response to the motion for summary judgment, Bordman’s conservator asserted that the notice of dismissal was void because Bordman was incompetent, suffering from senile dementia, as of September 17, 1997. To support this contention, Bordman’s conservator attached an affidavit from Bordman’s treating physician that opined that Bordman did not possess the requisite mental capacity in November of 1997 to understand his *376 actions in executing legal documents. The treating physician’s affidavit is sufficient to establish that there was a genuine issue of material fact in dispute as to whether Bordman was competent to execute the September 17, 1997 notice of dismissal. Also, in the judgment, the chancellor recognized that the change of Bordman’s status was not clear, meaning that his competency was in dispute. According to our standard of review, we find that there were genuine issues of material fact in dispute. Therefore, the chancellor erred in granting summary judgment based on the September 17,1997 notice of dismissal.
¶ 23. Also, as part of our review of the notice of dismissal, we recognize that Bordman challenged the legal validity and effect of the notice. Indeed, the record does not indicate who prepared or filed the notice. The record does not indicate how Bordman’s signature was obtained or whether there was in fact any consideration paid. The notice was signed by Bordman, pro se, and Jeanette’s attorney. According to the record, Bordman was previously represented by Frank Montague, and we can find no order granting Montague leave to withdraw. Therefore, on remand, the chancellor should consider the circumstances surrounding the execution of the September 17, 1995 notice of dismissal to determine the legal effect of the notice of dismissal.
¶24. Next, although the chancellor’s judgment did not appear to make a conclusion on this issue, the chancellor discussed Bordman’s competency, and the impact of the conservatorship on the claims asserted in Bordman’s third amended complaint. The chancellor avoided the competency issue by holding that the conservator could not bring such legal action without prior court approval, which was not obtained before filing the third amended complaint. The language used by the chancellor points to this legal conclusion but does not state that it was determinative of the issue. Indeed, we do not disagree with the chancellor’s statement of the law, as it applies to the authority of the conservatorship, but the fact remains that Bordman’s claims on tracts 3 and 4 were viable and not affected by the conservator-ship’s failure to obtain prior chancery court authority.
¶ 25. Finally, the chancellor mentions that Bordman’s conservator did not obtain leave of the court before filing the third amended complaint, as required by Rule 15(a) of the Mississippi Rules of Civil Procedure. However, the chancellor’s judgment does not indicate that the violation of Rule 15(a) was the basis for the summary judgment or dismissal of the complaint. Rule 15(a) provides that leave shall be granted where justice requires. Herrin’s motion for summary judgment, as amended, did not raise Rule 15(a) as a grounds for the summary judgment. Since this issue was not decided by the chancellor, the chancellor may consider whether leave should be granted or denied and what relief should be granted as a result thereof.
¶ 26. According to our standard of review and the Mississippi Supreme Court’s directive that summary judgments should be cautiously granted, Brown v. Credit Center, Inc., 444 So.2d 358 (Miss.1983), we find that the chancellor’s summary judgment should be reversed and remanded for further proceedings consistent with this opinion.
¶ 27. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
*377 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ„ CONCUR.

. Ruby died on January 22, 1993. Her will was probated in Texas.