# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01726-SCT

*RUBY CARTER, INDIVIDUALLY, AND ON BEHALF
OF THE WRONGFUL DEATH HEIRS AND
BENEFICIARIES, AND ESTATE OF STACIE
CARTER, DECEASED*

*v.*

*MISSISSIPPI DEPARTMENT OF CORRECTIONS
AND FRED CHILDS, IN HIS OFFICIAL CAPACITY
AS SUPERINTENDENT OF THE RANKIN COUNTY,
MISSISSIPPI CORRECTIONAL FACILITY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/3/2002 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CARROLL RHODES |
| ATTORNEYS FOR APPELLEES: | MICHAEL JEFFREY WOLF |
| | JAMES D. HOLLAND |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 11/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.     Individually and on behalf on the wrongful death heirs and the estate of Stacie Carter

(Stacie), Ruby Carter (Carter) filed suit against the Mississippi Department of Corrections

(MDOC) and Fred Childs (Childs), Superintendent of the Central Mississippi Correctional

Center in Rankin County (CMCC), in the Circuit Court of Copiah County, Mississippi.  The

Circuit Court of Copiah County transferred the case to the Circuit Court of Rankin County. The trial court allowed Carter to amend her original complaint on two occasions.

¶2. The trial court conducted a hearing on the MDOC and Childs' motion to dismiss or alternatively, for summary judgment. The trial court granted the motion to dismiss, or alternatively, for summary judgment and dismissed the second amended complaint with prejudice. The trial court certified the judgment as final as to the MDOC and Childs, in his official capacity as superintendent of the CMCC, pursuant to M.R.C.P. 54(b). Carter timely appealed the decision to this Court.

**FACTS**

¶3. Stacie Carter died at 6:37 p.m., on January 15, 1997, at the Rankin County Medical Center in Brandon, Mississippi. At the time of his death, Stacie was an inmate at the CMCC in Rankin County, Mississippi. Stacie had been convicted for burglary and robbery by the Lincoln County Circuit Court and sentenced on January 30, 1995, to serve two concurrent terms of five years in the custody of the MDOC. Stacie was initially moved from the Lincoln County Sheriff's Department to the MDOC facility at Parchman, Mississippi, and then he was transferred to the CMCC in Rankin County.

¶4. Stacie was prescribed and provided the drug, Dilantin, to control his seizures. According to inmate Valentine Lewis (Lewis), Stacie had his first seizure before supper.[1] Lewis reported the seizures to the guard on duty, Catherine Burgess (Officer Burgess), after Stacie suffered his third seizure.

---

[1] Lewis testified that supper was normally at approximately 5:00 p.m. everyday.

2

¶5.     Lewis testified that each time he went to Officer Burgess he observed Officer Burgess "get on the phone and call," but he did not stay to see if she got anyone.  According to Lewis, a S and E Officer came with an army cot.[2]  Stacie had seven seizures by the time the S and E Officer arrived.  Lewis estimated that 30 minutes passed before the S and E officer arrived.  Lewis testified that about 20 minutes passed after the officer arrived before Stacie was moved.  Two inmates helped Stacie to an army cot and carried him to the clinic.  No one was in the clinic.

¶6.     At approximately 5:05 p.m., Lt. Kevin Jackson (Lt. Jackson), the third watch commander, informed Capt. Patrick Marion (Capt. Marion), the institution watch commander, that Stacie needed to be transferred by ambulance from the clinic to the University of Mississippi Medical Center (UMMC) for medical treatment.

¶7.     At approximately 5:20 p.m., the ambulance arrived with EMS operators.  At approximately 5:40 p.m., the ambulance left the grounds with Stacie and Officer Kurt Wilson as escort.  At approximately 5:43 p.m., Lt. Jackson was notified by Capt. Marion that medical complications arose during transport.  Due to complications, Stacie was routed to the closest hospital, Rankin Medical Center.  Lt. Jackson was notified that at approximately 6:37 p.m., Stacie had died at Rankin County Medical Center.

¶8.     On appeal, Carter raises the following issues:

> **I.      Whether the trial court erred in determining that the MDOC and Childs were immune from liability pursuant to Miss. Code Ann. § 11-46-9(1)(m).**

---

[2] The record did not identify the meaning of the initials, S and E.

**II.** **Whether the trial court erred in determining that Carter had failed to establish any constitutional right violations.**

## DISCUSSION

### I. Miss. Code Ann. § 11-46-9(1)(m)

¶9.    Carter contends that the trial court erred in granting summary judgment to the MDOC and Childs based on their immunity from liability pursuant to Miss. Code Ann. § 11-46-9(1)(m).

¶10.    This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court. *Jenkins v. Ohio Cas. Ins. Co.*, 794 So.2d 228, 232 (Miss. 2001); *Russell v. Orr*, 700 So.2d 619, 622 (Miss. 1997); *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997); *Northern Elec. Co. v. Phillips*, 660 So.2d 1278, 1281 (Miss. 1995). Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." M.R.C.P. 56(c). The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss. 1990). *See also Heigle v. Heigle*, 771 So.2d 341, 345 (Miss. 2000). "If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied." *Williamson v. Keith*, 786 So.2d 390, 393 (Miss. 2001). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present

4

where one party swears to one version of the matter in issue and another says the opposite."

*Tucker*, 558 So.2d at 872.

> Of importance here is the language of the rule authorizing summary judgment 'where there is no genuine issue of *material* fact.' The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense...the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

*Simmons v. Thompson Mach. of Miss., Inc.*, 631 So.2d 798, 801 (Miss. 1994) (citing *Shaw v. Burchfield*, 481 So.2d 247, 252 (Miss. 1985)). The evidence must be viewed in the light most favorable to the non-moving party. *See Northern Elec. Co.*, 660 So.2d at 1281; *Russell*, 700 So.2d at 622; *Richmond*, 692 So.2d at 61; *Simmons,* 631 So.2d at 802; *Tucker*, 558 So.2d at 872.

¶11.    The MTCA provides the exclusive civil remedy against a governmental entity or its employee for tortious acts or omission which give rise to a suit. Miss. Code Ann. § 11-46-7(1) (Rev. 2002); *City of Tupelo v. Martin*, 747 So.2d 822, 826 (Miss. 1999); *Pickens v. Donaldson*, 742 So.2d 684, 687 (Miss. 1999).

¶12.    Miss. Code Ann. § 11-46-9 provides immunity from liability to the state and its political subdivisions for certain specific enumerated actions or inactions by the state or its employees. Miss. Code Ann. § 11-46-9(1)(m) states:

(1)     A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

(m)     Of an claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any

5

> detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed;

¶13. In its opinion and order granting summary judgment, the trial court held that section 11-46-9(1)(m) barred this action against the MDOC and Superintendent Childs.

¶14. Carter concedes that Miss. Code Ann. § 11-46-9(1)(m) bars the claims of a state inmate. However, Carter argues that "the wrongful death claims of [the] wrongful death survivors are distinct torts from the personal injury claims of inmates." Carter also contends that the denial of the wrongful death heirs of an inmate to bring suit amounts to constitutional violations of the due process clause and the equal protection clause.

¶15. In support of her position, Carter cites *Gentry v. Wallace*, 606 So.2d 1117 (Miss. 1992), out of context. In *Gentry*, this Court was actually addressing when the statute of limitations began to run in a wrongful death claim. This Court reasoned that:

> Had Mary Gentry lived to bring a medical negligence action for the personal injuries she sustained, the clock would have begun to tick on March 1, the date she might have reasonably discovered the negligence of her physicians. However, this is a wrongful death action brought by John Billy Gentry in his capacity as his mother's sole surviving heir. **Wrongful death is a separate distinct cause of action, which can be brought only by the survivors of the deceased.** Miss. Code Ann. § 11-7-13 (1972 and Supp. 1991). Without and until the death of Mary Gentry, there was no cause of action under the wrongful death statute to trigger the two year statute of limitations. Further, under the statute, the limitations period does not begin to run until the heir knows or should reasonably know about the medical negligence which caused the death.

*Gentry*, 606 So.2d at 1119 (emphasis added).

¶16. Contrary to Carter's position that the wrongful death survivors have a separate tort from that of the deceased inmate, Miss. Code Ann. § 11-7-13 (Supp. 2003) clearly states that

6

wrongful death beneficiaries are entitled to maintain an action and recover damages as would the decedent if death had not ensued:

> Whenever the death of any person shall be caused by any real, wrongful or negligent act or omission, or by such unsafe machinery, way or appliances as would, **if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof**, or whenever the death of any person shall be caused by the breach of any warranty, express or implied, of the purity or fitness of any foods, drugs, medicines, beverages, tobacco or any and all other articles or commodities intended for human consumption, **as would, had the death not ensued, have entitled the person injured or made ill or damaged thereby, to maintain an action and recover damages in respect thereof**, and such deceased person shall have left a widow or children or both, or husband or father or mother, or sister, or brother, the person or corporation, or both **that would have been liable if death had not ensued**, and the representatives of such person shall be liable for damages, notwithstanding the death, and the fact that death was instantaneous shall in no case affect the right of recovery. The action for such damages may be brought in the name of the personal representative of the deceased person for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of his wife, or by the parent for the death of a child, or in the name of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother from the death of a brother, or all parties interested may join in the suit...

Miss. Code Ann. § 11-7-13 (emphasis added).

¶17.    In *Webb v. DeSoto County*, 843 So.2d 682 (Miss. 2003), this Court recently addressed a similar situation.  Michael Chambers was found dead in his cell while incarcerated at the DeSoto County Detention Center.  Chambers's parents, Donna Webb and Robert Chambers, filed a wrongful death suit against DeSoto County and others.  This Court upheld the trial court's dismissal of the claim finding that Miss. Code Ann. § 11-46-9(1)(m) barred suits by inmates or their wrongful death beneficiaries.  *Id*. at 684-85.  In *Webb*, we stated:

> Webb and Chambers attempt to circumvent Miss. Code Ann. § 11-46-9 (1) (m) by alleging that an action for wrongful death is an independent cause of

7

action; therefore, placing them in a position different from the decedent. However, this Court has found that a wrongful death suit is a derivative action by the beneficiaries, and those beneficiaries, therefore, stand in the position of their decedent. *See **Wickline v. U.S. Fid. & Guar. Co.**,* 530 So.2d 708, 715 (Miss. 1988).

Webb and Chambers stand in the position of Michael Chambers. Therefore, Webb and Chambers are only entitled to the remedy afforded to Michael Chambers if he had survived. Since § 11-46-9 (1) (m) provides him with no remedy, so it also prevents a suit by his heirs. Webb and Chambers are unable to bring a wrongful death suit on behalf of a prisoner who dies while incarcerated. For the aforementioned reasons, we find no reversible error.

Webb and Chambers argue that the waive of immunity contained in § 11-46-5 supercedes the specific types of immunity set forth in § 11-46-9. Miss. Code Ann. § 11-46-5 provides in pertinent part:

> (1)  Notwithstanding the immunity granted in § 11-46-3, or the provisions of any other law to the contrary, the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived from and after July 1, 1993, as to the state, and from and after October 1, 1993, as to political subdivisions; provided, however, immunity of a governmental entity is any such case shall be waived only to the extent of the maximum amount of liability provided for in § 11-46-15.

This contention by Webb and Chambers is not supported by any applicable case law. Failure to cite legal authority in support of an issue is a procedural bar on appeal. ***McClain v. State***, 625 So.2d 774, 781 (Miss. 1993).

843 So.2d at 684-85.

¶18.   This Court finds that the trial court did not err in finding that MDOC and Childs, acting within the course and scope of his employment and duties, were immune from liability by virtue of Miss. Code Ann. § 11-46-9(1)(m) since Stacie was an inmate at the time. Likewise, Stacie's wrongful death survivors are not entitled to maintain an action against the MDOC and Childs.

## II. Carter's Constitutional Claim

¶19. State courts have concurrent subject matter jurisdiction with federal courts over 42 U.S.C. § 1983 claims. *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980). In *Martinez*, the Court further stated:

> [A]s we recently held in *Baker v. McCollan*, 443 U.S. 137 S.Ct. 2689, 61 L.Ed.2d 433, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws of the United States.'" The answer to that inquiry disposes of this case.

444 U.S. at 284.

¶20. Summary judgment on claims raised pursuant to § 1983 is reviewed de novo as any other summary judgment to inquire if the trial court properly granted the motion for summary judgment. *See Mallery v. Taylor*, 805 So.2d 613, 620 (Miss. Ct. App. 2002). *See also Jenkins v. Ohio Cas. Ins. Co.*, 794 So.2d at 232 (this Court applies a de novo standard of review on appeal from a grant of summary judgment.).

¶21. Carter contends that the facts establish an Eighth Amendment claim, a Due Process Clause and an Equal Protection Clause violation. Carter argues that Childs and the MDOC are liable due to their deliberate indifference to the serious medical needs of the prisoners proscribed in the Eighth Amendment.

¶22. In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), the United States Supreme Court stated that:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the State itself. *See, e.g. Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3104-3105, 87 L.Ed.2d 114 (1985).

¶23.	In *Monell v. Department of Social Services*, 436 U.S. 658, 690-91, 694, 701, 98 S.Ct. 2018, 2035-37, 2041, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that local governmental bodies were subject to § 1983 liability where a violation of federal rights results from the enforcement of a governmental policy or custom.  However, *Monell* refused to extend governmental liability based upon the doctrine of respondeat superior merely because it employed a tortfeasor.  436 U.S. at 691-92.

¶24.	In order to establish liability for a § 1983 violation, either on the part of the individual official or a governmental body, the plaintiff's harm must have been caused by a constitutional violation.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992).  In *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986), the United States Supreme Court stated that if "no constitutional injury [was inflicted] on [the] respondent, it is inconceivable that [the] petitioners could be liable to [the] respondent."

¶25.	In the case sub judice, the trial court found that Carter failed to meet her burden in order to establish that the MDOC acted or failed to act within the requisite deliberate indifference to medical treatment for Stacie.  The trial court stated:

> Plaintiff [Carter] claims defendants violated Carter's [Stacie's] constitutional rights through their deliberate, intentional, malicious and reckless disregard for his rights, and by having an arbitrary and capricious policy of not providing physicians, medical staff, medical treatment, medical facilities and ambulances to inmates.
> After the plaintiff in *Wallace* argued a violation of the Remedy, Due Process and Equal Protection Clauses of the Mississippi and United States Constitutions, the Mississippi Supreme Court recognized in *Wallace* that in *Robinson v. Stewart*, 655 So.2d 866 (Miss. 1995), it had held the remedy clause, Miss. Const. art. 3, § 24, does not conflict with sovereign immunity, does not require exceptions to sovereign immunity and does not grant an

10

absolute guarantee of a trial.  ***Wallace*** at ¶ 10 (citing ***Robinson*** at 868-869 citing ***Grimes v. Pearl River Valley Water Supply Dist.***, 930 F.2d 441 (5th Cir.)).  The Supreme Court has further stated that:

> [i]n ***Robinson***, this Court also held sovereign immunity did not violate due process.  665 So.2d at 869.  "A due process violation requires the infringement of a liberty or property right."  ***Id***. at 869 (citing ***Tucker v. Hinds County***, 558 So.2d 869, 873 (Miss. 1990)).  Because the right to sue the State has been withheld through the statutes by the Legislature, there is no property right to sue the State or other governmental entities and, therefore, no due process violation of the Mississippi Constitution. ***Robinson***, 655 So.2d at 869.  The same analysis applies to the United States Constitution because state law defines property interests, and the Mississippi Legislature has continuously denied any exceptions to overcome sovereign immunity.  ***Grimes***, 930 F.2d at 444.

***Wallace*** at ¶ 11.

> The Supreme Court continued to state that:
> [i]f the statute is found to be rationally related to a legitimate purpose, "equal protection is not violated by conferring benefits on some and not all of the people of the state." ***Mosby v. Moore***, 716 So.2d 551, 556 (Miss. 1998).  The Legislature had a legitimate purpose in protecting governmental entities from claims brought by inmates, thus there is not equal protection violation in denying prison inmates certain rights granted to law-abiding citizens.  The court in ***Grimes*** also held the sovereign immunity statute did not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. 930 F.2d at 444.

***Wallace*** ¶ 12.

> The United State Court of Appeals for the Fifth Circuit has declared: (1) that the state owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee, but responded with deliberate indifference to that risk.

***Hare v. City of Corinth***, 135 F.3d 320 (5th Cir. 1998) quoting ***Hare v. City of Corinth***, 74 F.3d 633 (5th Cir. 1996).

The standard the Court has applied in reviewing the alleged Eight Amendment rights violations, specifically involving denial or interference with the medical needs of Carter, is the above "deliberate indifference" standard.  In

11

all of the testimony of plaintiff and her children, the known wrongful death beneficiaries of Carter, and the testimony of MDOC personnel, the Court does not find any evidence of "deliberate indifference" on the part of defendants in respect to their treatment of Carter. Pursuant to *Hare*, plaintiff has the burden of showing that the MDOC acted or failed to act with "deliberate indifference" to the "basic human needs" of Carter. Plaintiff has failed to make such a showing.

¶26. We find that the trial court did not err by granting summary judgment as to Carter's constitutional claims in favor of the MDOC. As the trial court determined, Carter did not establish that Stacie suffered any constitutional violation. Therefore, this Court finds that since Carter does not clearly establish a constitutional violation this issue is without merit.

## CONCLUSION

¶27. For the foregoing reasons, the judgment of the Circuit Court of Rankin County is affirmed.

¶28. **AFFIRMED**.

**SMITH, P.J., COBB AND CARLSON, JJ., CONCUR. PITTMAN, C.J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, J. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶29. The majority's holding today all but eliminates an inmate's constitutional right to receive medical treatment while incarcerated. It is contrary to the very constitutional principles which have been laid down by the United States Supreme Court. For this reason, I dissent.

¶30. Under the Eighth Amendment of the United States Constitution, Carter, as a detained inmate, was guaranteed reasonable and adequate medical care. *See Estelle v. Gamble*, 429

U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In order for an inmate to prevail on an Eighth Amendment claim, he must prove that prison officials exercised "deliberate indifference to a serious medical condition." *Id.* at 104, 97 S.Ct. at 290-91. Such "deliberate indifference" can be evidenced by a prison official's intentional denial or delay in providing medical treatment. *Id.* Furthermore, both the federal and state governments have a constitutional obligation to provide "minimally adequate" medical care to those whom they incarcerate. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291). *See also Wellman v. Faulkner*, 715 F.2d 269, 271 (7th Cir. 1983); *Morgan v. Sproat*, 432 F. Supp. 1130, 1143 (S.D. Miss. 1977). Grossly inadequate medical care will suffice to prove an Eighth Amendment violation with regards to minimal medical care provided to inmates. *Harris*, 941 F.2d at 1505 (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

¶31. Here, Carter was not only wholly denied adequate and minimal medical care, but the prison guards and officials acted with deliberate indifference in failing to provide him medical care at all until it was too late. It is undisputed that the Central Mississippi Correctional Center did not provide medical care adequate to treat Carter's seizure condition. In fact, the evidence reflects that no medical staff was on hand the night of him death. To make matters even worse, before an ambulance was even called, Carter had suffered seven seizures, and the guard on duty had been informed of the seizures several times. Even after being informed that Carter had suffered seven seizures, the prison officials still chose to place him on a cot then transfer him to an empty CMCC clinic where no nurse or doctor was present or on call. It was only after Carter had repeatedly seized for over an hour that an ambulance was called for his

transport. Under these facts, one can clearly see that not only did the CMCC fail to provide adequate medical personnel, but the prison officials also exhibited "deliberate indifference" for the serious medical condition for which Carter suffered. On this record summary judgment and/or dismissal was not appropriate as Carter's complaint clearly stated a claim for which relief may be granted and genuine issues of material fact exist with regard to the issues just discussed.

¶32. "[W]hen the State takes a person into its custody and holds him against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 206, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989) (citing *Youngberg v. Romeo*, 457 U.S. 307, 317, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982)). Because this record does not establish that the State discharged its duty here, I would reverse the trial court's judgment and remand for further proceedings. For these reasons, I dissent.

**WALLER, J., JOINS THIS OPINION**.