890 So.2d 65 (2004)
Melvin HINSON, Individually and Melvin Hinson d/b/a Hinson Plumbing, Inc., Appellant
v.
N & W CONSTRUCTION COMPANY, INC., Appellee.
No. 2002-CA-01353-COA.
Court of Appeals of Mississippi.
June 29, 2004.
Rehearing Denied October 5, 2004.
Edwin Woods, Jackson, attorney for appellant.
Lynn H. Patton, Jackson, attorney for appellee.
Before SOUTHWICK, P.J., LEE, IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Melvin Hinson appeals from a summary judgment granted against him by the Circuit Court of the First Judicial District of Hinds County in a contract dispute with N & W Construction Company, Inc. He asserts that the granting of summary judgment was improper because there existed material and genuine issues of fact as to whether a contract existed between him and N & W and if so, whether it had been breached. He also argues that the doctrine of promissory estoppel is not applicable.
¶ 2. We find that summary judgment was proper; therefore, we affirm the decision of the circuit court.

*66 FACTS
¶ 3. In early September 2000, N & W prepared a bid to submit to the Mississippi Job Corps Center (MJCC) to construct a kitchen and culinary arts building in Crystal Springs, Mississippi. In preparing its bid, N & W received bids from several plumbing subcontractors, including Hinson, to perform the plumbing work.
¶ 4. Hinson quoted $92,000 as his bid for the subcontracting job. Hinson's quote was the lowest that N & W received for the plumbing work. The next lowest quote received by N & W was from Burch Mechanical, Inc. (Burch) for $138,900. N & W used Hinson's quote for plumbing work in its contractual bid for the building and then submitted the bid to MJCC. MJCC subsequently awarded the building contract to N & W.
¶ 5. Shortly thereafter, N & W called and informed Hinson that it had been awarded the prime contract and that it needed Hinson to perform the plumbing work. N & W forwarded the subcontract for the plumbing work to Hinson. When Hinson failed to sign and return the plumbing subcontract to N & W, N & W called Hinson to request him to start work. Hinson told N & W that he would not perform the plumbing job. After several unsuccessful attempts to get Hinson to begin the plumbing work on the building, N & W entered into a plumbing subcontract with Burch for $138,900.
¶ 6. On December 14, 2000, N & W filed a complaint against Hinson in the Circuit Court of the First Judicial District of Hinds County, Mississippi. N & W demanded damages for Hinson's failure to honor his oral quote to it concerning the subcontracting work that he was to perform for N & W. After conducting some discovery, N & W filed a motion for summary judgment or, in the alternative, motion for partial summary judgment on the ground of estoppel.
¶ 7. On March 11, 2001, a hearing was conducted on N & W's motion for summary judgment. The circuit court granted the motion and entered a final judgment and order, awarding N & W the principal amount of $46,900 plus post-judgment interests.

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. Our supreme court has stated that the appellate courts will review motions for summary judgment on appeal by the following standard:
This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court. Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." M.R.C.P. 56(c). The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. "If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied." "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." Of importance here is the language of the rule authorizing summary judgment `where there is no genuine issue of material *67 fact.' The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense ... the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.
Carter v. Miss. Dep't of Corrs., 860 So.2d 1187, 1190(¶ 10) (Miss.2003) (citations omitted).

1. Promissory Estoppel
¶ 9. Hinson argues that the circuit court erred when it awarded summary judgment in favor of N & W because (1) no contract was formed between the parties, (2) the elements of promissory estoppel were not established, and (3) the record lacks evidence supporting the elements of a negligent misrepresentation claim.
¶ 10. This Court need not review Hinson's first two grounds for reversal because N & W's motion for summary judgment was pursued under the theory of promissory estoppel, and not breach of contract or negligent misrepresentation. If granting summary judgment to N & W on the basis of promissory estoppel was proper, it becomes a moot question as to whether there was arguably other bases upon which summary judgment may have been properly rendered. Therefore, we determine whether the circuit court properly granted summary judgment on the theory of promissory estoppel.
¶ 11. The doctrine of promissory estoppel has been stated as follows:
[A]n estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetuation of fraud or would result in other injustice.
C.E. Frazier Constr. Co., v. Campbell Roofing & Metal Works, 373 So.2d 1036, 1038 (Miss.1979).
¶ 12. A review of the undisputed facts of this case and the evidence submitted by the parties in response to N & W's motion for summary judgment  excerpts from Melvin Hinson's deposition, the affidavit of James R. Nickles, Jr., the subcontract work on which Hinson had bid, the written quote from Burch for the plumbing subcontract work, two letters from N & W requesting Hinson to begin work and warning him of possible liability for not honoring his bid, and the subcontract N & W had to enter into with Burch when Hinson refused to honor his quote  clearly indicate that the circuit court correctly granted N & W's motion for summary judgment on the theory of promissory estoppel.
¶ 13. The record establishes that there is no genuine issue as to any material fact which would preclude summary judgment in favor of N & W on the ground of promissory estoppel. In his answer to N & W's complaint, Hinson admits that he provided a verbal quote to N & W in the amount of $92,000 for plumbing work on the building. He also affirms this fact in his deposition:
Counsel for N & W: I want to talk to you just a minute about the Mississippi Job Corps contract for the Kitchen/Culinary Arts Building in Crystal Springs, Mississippi. Are you familiar with that project?
Hinson: Yes, sir.
* * * *
Counsel for N & W: Did you quote the job to N & W Construction Company?

*68 Hinson: Yes, I gave him a price over the phone.
¶ 14. Moreover, in his deposition, Hinson testified that he reviewed the plans and specifications for the building, worked on his quote for approximately a week, and was satisfied with his price of $92,000. He further testified that he intended that N & W rely on his quote to perform the plumbing work:
Counsel for N & W: At the time you submitted your quotation to N & W, did you intend to do that work if you were the lowest bidder?
Hinson: Yes.
Counsel for N & W: And if you were the lower bidder did you expect N & W to contract with you to do that work?
Hinson: Yes.
¶ 15. Moreover, Hinson does not dispute that N & W used his quote for the plumbing work in its bid for the building contract. Hinson admitted that N & W informed him that it had received the building contract and that it expected him to sign the subcontract, return the document to the N & W office, and do the plumbing work for the building. Upon being informed that he had the job, Hinson later explained in his deposition that he refused to do the plumbing work and his reasons for not executing the job:
Counsel for N & W: All right. Well, let's go to when Chris (of N & W) said we're ready for you to start work. What did you say to Chris?
Hinson: I was too busy.
Counsel for N & W: Too busy. Okay. What did you mean by being too busy?
Hinson: I just had a lot of other jobs going.
¶ 16. The facts here are similar to those in C.E. Frazier. In C.E. Frazier, a contractor received a telephone quotation of $10,612 from a subcontractor for furnishing and installing insulation and roofing pursuant to a school district project. Id. at 1037. Relying in part on the price quoted by the subcontractor, the contractor submitted its bid for the project, and as a result, was awarded the contract. Id. The contractor sent the subcontract to the subcontractor; however, the subcontractor refused to sign the subcontract. Id. The contractor was forced to seek other quotations and awarded the subcontract to the next lowest bidder for $13,639. Id. Shortly thereafter, the contractor brought an action against the subcontractor for damages based on promissory estoppel. Id. Our supreme court held that the averments in the contractor's complaint that he received a telephone quotation from the subcontractor for a specific price for work and that the contractor included such price, without modification, in his bid for the contract were sufficient to establish that a promise was made, and thus the contractor's complaint sufficiently stated equity. Id. at 1039.
¶ 17. Unlike C.E. Frazier, N & W not only made averments but demonstrated through undisputed facts that it should prevail on the theory of promissory estoppel. We therefore find that no genuine issue of any material fact exists as to whether N & W should prevail on its theory of promissory estoppel.

2. Damages
¶ 18. Finally, Hinson argues that the circuit court improperly awarded damages to N & W because the record lacks sufficient evidence to determine the nature of N & W's damages. He explains that the only reference to damages is contained in the affidavit of N & W's president, James Nickles, who claimed that N & W *69 had been damaged in the amount of $46,900.
¶ 19. Hinson is incorrect. Nickles did represent $46,900 as the amount of damages suffered by N & W. However, it is readily apparent that figure represents the difference between Hinson's quote of $92,000 and the amount of the subcontract ($138,000) which N & W awarded to Burch after Hinson refused to perform. The $46,900 figure reflects the amount of money N & W became obligated to pay to complete the Crystal Springs Job Corps contract when Hinson refused to honor his quote. Therefore, the $46,900, plus post-judgment interest, accurately represent the amount of damages suffered by N & W after N & W submitted its bid in reliance upon Hinson's promise to perform the plumbing work for $46,900.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.