# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00107-SCT

*CHRISTOPHER STEWART*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2021 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| TRIAL COURT ATTORNEYS: | MICHAEL EDWARD HENRY |
| | CHRISTOPHER SCOTT ROUTH |
| | TAMETRICE EDRICKA HODGES |
| | JODY EDWARD OWENS, II |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/18/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. A jury found Christopher Stewart guilty of two separate counts of sexual battery—one count each for sexually penetrating his two preteen nieces, Alice and Jane.[1] On appeal, Stewart claims, among other things, that he is entitled to a new trial because he was not

---

[1] Because this case involves minor sexual-battery victims, this opinion uses pseudonyms to protect their identities.

present at a pretrial tender-years hearing. He also argues his convictions should be overturned because the evidence was insufficient. We find no reversible error and affirm.

¶2. First, the tender-years hearing occurred during the COVID-19 pandemic. Stewart was in jail awaiting trial. And to prevent spreading the virus to other inmates, Stewart was not permitted to leave the facility. Under the circumstances, Stewart fails to show how his virtual attendance—as opposed to his physical attendance—was reversible error. The nature of the hearing was to determine if certain witnesses could testify about what Stewart's young victims revealed to them based on the tender-years exception to the hearsay rule. Stewart attended this hearing by video. And later, when the witnesses ultimately testified at trial, Stewart was present in the courtroom. He also had full opportunity at trial to cross-examine each of them, and he did so. The United States Supreme Court has addressed a similar argument about a defendant's exclusion from a pretrial hearing to assess two child sex victims' competency to testify. And the Supreme Court found no Confrontation Clause or due-process violation. *Kentucky v. Stincer*, 482 U.S. 730, 107 S. Ct. 265, 896 L. Ed. 2d 631 (1987). Based on *Stincer*, and the pandemic-based circumstances before us, we find Stewart, like Stincer, has not demonstrated that he is entitled to a new trial.

¶3. Second, we find no merit to Stewart's attack on the sufficiency of the evidence. In the indictment, the State alleged Stewart sexually battered both girls by three different means—by vaginal, anal, and oral penetration. Stewart argues the State had to prove all three types of penetrations occurred to convict him, which he claims the State did not do. But the record shows he did prove all three means. Moreover, because the gravamen of the

2

offense—sexual penetration of a minor—can be committed by multiple alternate means, proof that Stewart committed sexual penetration by one means sufficed to support the jury's guilty verdict.

¶4. We affirm both convictions and sentences.

## Background Facts & Procedural History

### I. Discovery of Sexual Abuse

¶5. In November 2019, first cousins Jane and Alice both revealed that their maternal uncle Stewart—a/k/a "Uncle C.J."—had been sexually abusing them. Both girls were under the age of fourteen.

¶6. Jane was around eleven years old when her stepmother Dee[2] took her to a library event called "No Means No." During the program, the kids were asked if anyone had made them feel uncomfortable or had touched them. Jane raised her hand and answered that her uncle had. After the program, Dee asked Jane which uncle had made her feel uncomfortable and why. Jane told her stepmother that "Uncle C.J." had been "R'ing" her. Dee asked Jane what "R'ing" meant, and Jane responded that she meant raping, but she thought that "rape" was a curse word. When Dee told Jane she would need to tell her father, Jane got upset and stopped talking. So Dee ended the conversation. But months later, Jane said she was finally ready to talk about what had been happening. Jane again told Dee that Uncle C.J. was raping her. And when Dee asked specifically what Stewart had done, Jane said he "was sticking his middle part into her middle part and her behind and her mouth."

---

[2] Dee is also a pseudonym.

¶7.    Jane's mother—Stewart's sister—had died earlier that year.  But while her mother was alive, both Jane and Stewart lived with her.  Jane revealed that Stewart would sexually batter her when everyone else was asleep.  Stewart even raped Jane the night her mother died, when most adult family members were at Jane's mother's bedside at the hospital.

¶8.    Dee asked Jane if Stewart was doing the same thing to anyone else.  And Jane revealed that Stewart was also raping her cousin Alice.  So Dee called Alice's mother—who is also a sister of Stewart—and asked her to bring Alice to her house.  Dee asked Alice if anyone had been touching her in places they were not supposed to.  While Alice first responded no, she then said yes. And she too revealed that "Uncle C.J. . . . would stick his middle part in my middle part and my mouth and my butt."

¶9.    Dee and Alice's mother contacted the police.  Then they took both girls to the children's hospital at University of Mississippi Medical Center for a medical examination.  The exams revealed both girls had chlamydia, which required follow-up treatment.  Soon after, Stewart went to be screened for STDs and also tested positive for chlamydia.

¶10.   Days after their medical exams, the girls submitted to forensic interviews at the Mississippi Children's Advocacy Center.  Jane repeated to her interviewer, DeQuian Johnson, that Stewart had put his "middle part" in her "middle part," in her "butt," and in her mouth.   Jane clarified to Johnson that "middle part" on a male meant his penis and on a female "middle part" meant her vagina.  Alice, in her interview with Charlene Barnette, relayed similar events—that Stewart put his "middle part" in her "middle part" and in her butt. Alice did not tell Barnette that Stewart had put his middle part in her mouth.  But when

Alice received follow-up treatment, it was discovered that the young girl had chlamydia in her throat.

## II. Prosecution for Sexual Battery

¶11. In February 2020, just weeks before Mississippi entered a state of emergency due to the COVID-19 global pandemic, Stewart was arrested. He was jailed at the Raymond Correctional Facility, where he remained until his trial.

¶12. The State indicted Stewart on two counts of sexual battery—one count for Alice and one count for Jane—in violation of Mississippi Code Section 97-3-95(1)(d) (Rev. 2014). Both counts alleged that Stewart, "being above the age of eighteen (18) years . . . did willfully, intentionally and feloniously engage in sexual penetration with a child under the age of fourteen (14) years of age at a time when he was twenty four (24) or more months older than the child . . . ." And both counts detailed Stewart's crime—that he "sexually penetrated his niece, . . . both vaginally and anally, and made her perform fellatio on him multiple times . . . ."

¶13. Stewart attended at least one pretrial hearing in person. But COVID-19 cases began to spike in the summer of 2021. So Stewart was not permitted to leave the detention center for the pretrial hearing. The hearing was not aimed at obtaining substantive testimony. Rather, it was held to determine if several witnesses could testify as to what Jane and Alice revealed to them under the tender-years exception to the hearsay rule. *See* MRE 803(25). Stewart appeared via video conference, over his counsel's objection, while Stewart's counsel participated in the hearing in person. At the close of the two-day hearing, the trial court ruled

5

that Dee, Alice's mother, and the two forensic interviewers could testify under the tender-years exception.

¶14. At trial, with Stewart present, Jane and Alice testified. Jane maintained that Stewart put his penis in her vagina, her butt, and her mouth. Alice testified Stewart put his penis into her vagina and her butt. But Alice did not state Stewart penetrated her orally. The forensic interviewers, Johnson and Barnette, also testified. And so did Dee and Alice's mother.

¶15. The jury found Stewart guilty on both counts. The trial court sentenced him to thirty-five years' imprisonment on each count, with the sentences to be served concurrently.

¶16. After the trial judge denied his post-trial motion, Stewart appealed.[3]

**Discussion**

**I.      Tender-Years Hearing**

¶17. Stewart first claims he is entitled to a new trial because the trial court conducted the pretrial tender-years hearing without his being physically present. Citing the Sixth Amendment to the United States Constitution and article 3, section 26, of the Mississippi Constitution, Stewart argues his participation by video conference violated his constitutional right to be present at every critical stage of his trial. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." ); Miss. Const. art. 3, § 26 ("In all criminal prosecutions the accused shall have

---

[3] In addition to the brief filed by his appellate counsel, Stewart also submitted a pro se supplemental brief. This opinion addresses the arguments raised in counsel's brief only. Stewart's supplemental brief does not articulate any additional arguments supported by the record or relevant law. *Eubanks v. State*, 291 So. 3d 309, 322 (Miss. 2020) ("Failure to cite legal authority in support of an issue is a procedural bar on appeal." (quoting *Carter v. Miss. Dep't of Corrs.*, 860 So. 2d 1187, 1193 (Miss. 2003))).

a right to be heard by himself or counsel, or both, . . . [and] to be confronted by the witnesses against him . . . ."). Stewart also points to Mississippi Rule of Criminal Procedure 10.1(a), which states "[t]he defendant has the right to be present at the arraignment and at every stage of the proceedings."

¶18. While we are highly protective of a criminal defendant's right to be present under Rule 10.1(a), under the facts of this case, no reversible error occurred.

¶19. First, the trial judge faced unprecedented circumstances that led to Stewart's virtual presence at the hearing—namely, the COVID-19 global pandemic. While Stewart acknowledges certain emergency measures were in place at the time of the tender-years hearing, he contends those emergency measures did not alter his right under Rule 10.1(a) to be physically present. The State counters that, while Rule 10.1(a) was never expressly suspended, the emergency orders both authorized and encouraged trial courts to develop and use available technology to minimize the risk of spreading the potentially deadly virus throughout detention centers. *E.g.*, Emergency Administrative Order-4, ***In re: Emergency Order Related to Coronavirus (COVID-19)***, No. 2020-AD-00001-SCT (Mar. 18, 2020). We find that, under the unique circumstances of the pandemic, the trial court was within its authority and discretion to use audio-visual equipment so that Stewart could appear virtually at the pretrial hearing, which was held when he could not leave the Raymond Detention Center due to an uptick in COVID-19 cases.

¶20. Second, we have clear guidance from the United States Supreme Court decision in ***Stincer***, 482 U.S. 730. Like Stewart's case before us, ***Stincer*** also involved criminal charges

of sexual battery of children. And Stincer argued his constitutional rights were violated by his exclusion from a hearing to determine if his child victims were competent to testify. *Id.* at 735. The Supreme Court disagreed. The high court concluded that neither Stincer's Sixth Amendment right to confront the witnesses against him nor his Fourteenth Amendment due-process right to be present were violated by his exclusion from the competency hearing. *Id.* at 744-46.

¶21. In addressing Stincer's Sixth Amendment claim, the Supreme Court emphasized "the Confrontation Clause's functional purpose in ensuring a defendant an opportunity for cross-examination." *Id.* at 739 (citing *Lee v. Illinois*, 476 U.S. 530, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986)). So the question is "whether excluding the defendant from the hearing interfere[d] with his opportunity for effective cross-examination." *Id.* at 740. The Supreme Court concluded "[n]o such interference occurred when [Stincer] was excluded from the competency hearing of the two young girls in this case." *Id.* This was because, "[a]fter the trial court determined that the two children were competent to testify, they appeared and testified in open court[.] *Id.* When in open court at trial, they "were subject to full and complete cross-examination, and were so examined." *Id.* And just like Stewart was in this case, Stincer "was present throughout this cross-examination and was available to assist his counsel as necessary." *Id.* Thus, "[b]ecause [Stincer] had the opportunity for full and effective cross-examination of the two witnesses during trial, and because of the nature of the competency hearing at issue in this case," the Supreme Court concluded Stincer's Confrontation Clause rights were not violated. *Id.* at 744.

¶22. Nor was Stincer's constitutional right to be present violated. *Id.* at 745. As the Supreme Court explained, while due process guarantees a defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome[,]" this guarantee is not absolute. *Id.* "[T]his privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow[.]'" *Id.* (quoting ***Snyder v. Massachusetts***, 291 U.S. 97, 108, 54 S. Ct. 330, 332, 78 L. Ed. 674 (1934), *overruled on other grounds by **Malloy v. Hogan***, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)). Instead, what due process "requires [is] that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence[.]'" *Id.* (quoting ***Snyder***, 291 U.S. at 108). "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Id.* In Stincer's case, he gave "no indication that his presence at the competency hearing . . . would have been useful in ensuring a more reliable determination as to whether the witnesses were competent to testify"—which was the only issue addressed. *Id.* at 747. So the Supreme Court concluded Stincer's right to be present was not violated.

¶23. As to Stewart's case, the nature of the tender-years hearing was obviously similar to a competency hearing—it was for the trial court to determine if witnesses should be allowed to testify at trial. Just as in ***Stincer***, here, the four tender-years witnesses all testified at trial. And Stewart's virtual, but not physical, presence at the tender-years hearing by no means interfered with his opportunity for effective cross-examination of the witnesses whose hearsay testimony was deemed admissible under Rule 803(25). At Stewart's trial, these

9

witnesses were subject to a full and complete cross-examination and were indeed aggressively examined by Stewart's counsel. This cross-examination was conducted while Stewart was present in court at counsel table and available to assist as necessary. So according to *Stincer*, there was no violation of Stewart's constitutional right to confront the witnesses against him.

¶24. In considering Stewart's constitutional right to be present, we note that unlike Stincer, Stewart *was not* fully excluded from the tender-years hearing. Stewart attended, albeit virtually. While we caution not to equate appearing by video conference with appearing in person, we do find Stewart's virtual presence certainly factors into the *Stincer* consideration whether Stewart's in-person presence would have "contribute[d] to the fairness of the procedure" or would have "benefit[ed] but a shadow." *Stincer*, 482 U.S. at 745. We find the particular facts here point to the latter—that Stewart cannot and has not demonstrated any benefit that would have come from his being there in person, as opposed to participating by video conference. And there is simply no indication whatsoever that the hearing was "thwarted by his absence." *Id.* "On the record of this case, therefore, we cannot say that [Stewart's] rights under the Due Process Clause of the Fourteenth Amendment were violated by his [physical] exclusion from the [tender-years] hearing." *Id.* at 747.

¶25. Thus, guided by *Stincer*, and acknowledging the pandemic-based challenges, we find no reversible error in Stewart's participating by video conference during the tender-years hearing, particularly in light of his presence at trial and his cross-examination of these witnesses.

## II. Sufficiency of the Evidence

¶26. Next Stewart argues the evidence was insufficient to support his two convictions. Because the indictment charged that he sexually battered each victim by engaging in vaginal, anal, and oral penetration, Stewart argues the State had to present evidence of all three methods of penetration to sustain a conviction. Stewart contends that no evidence was presented at trial that he engaged in oral penetration of Alice or that he penetrated either Alice's or Jane's anus. So he claims neither conviction can stand.

¶27. But Stewart's claim has no basis in fact or law.

### A. There was evidence of all three means of penetration.

¶28. First, Stewart's contention is contrary to the evidence. When evaluating a sufficiency-of-the-evidence claim, we must view the evidence in the light most favorable to the State and ask if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sanford v. State*, 247 So. 3d 1242, 1244 (Miss. 2018) (quoting *Hearn v. State*, 3 So. 3d 722, 740 (Miss. 2008)). And when viewed in this light, we find the evidence that Alice told Dee that Stewart had put his penis in her mouth—coupled with medical evidence that Alice had chlamydia in her throat—was sufficient for a rationale juror to find Stewart orally penetrated Alice. Stewart protests that the chlamydia was not discovered until Alice's later follow-up treatment and thus was not conclusive that he was the person who gave Alice the STD. But when we view this evidence in the light most favorable to the State, as our law requires, we find a juror could conclude that Stewart's penis had penetrated Alice's mouth.

¶29. The same is true of the evidence that Stewart put his penis in both Jane's and Alice's anal openings. Citing *Ringer v. State*, 203 So. 3d 794, 796-97 (Miss. Ct. App. 2016), Stewart argues that the crease between the buttock is not the same as the anal opening. So he contends that evidence he put his penis in their butts does not necessarily mean that he penetrated their anuses. But when this evidence is viewed in the light most favorable to the State, we find a rationale juror could have found anal penetration of both girls beyond a reasonable doubt. Jane described the encounter as rape. And she gave details about how Stewart put his penis inside her buttocks. Alice also testified how Stewart's putting his penis in her butt hurt her.

### B. The State only had to prove one means of penetration.

¶30. Second, the gravamen of the statute criminalizing sexual battery of a minor is penetration, not the various and unspecified means by which that penetration may be perpetrated, which are not elemental. *See* Miss. Code Ann. § 97-3-95; Miss. Code Ann. § 97-3-97(a) (Rev. 2014) (defining "sexual penetration"). And based on how sexual penetration is defined, the Legislature clearly contemplated the essential element of sexual penetration could be committed by multiple alternate means, including "cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code Ann. § 97-3-97(a). In other words, to commit sexual penetration, one does not have to engage in all the activities listed in Section 97-3-97(a). Just one of those activities will suffice. So the State needed only to prove one

12

of the charged means of penetration. And Stewart does not—and cannot—argue there was no evidence of vaginal penetration of both girls. Thus, his argument fails as a matter of law as well.

### III.   Jury Instructions

¶31.    Stewart also argues that the trial court erred by giving jury instructions S-1B, S-2B, and S-4. Stewart claims these instructions failed to accurately convey the essential element of sexual penetration. But Stewart did not object to these instructions on this basis. In fact, at the insistence of Stewart's counsel, the State agreed to change the language of S-1B and S-2B to track the language of the indictment. So this issue is procedurally barred. *Spiers v. State*, 361 So. 3d 643, 654 (Miss. 2023).

¶32.    While the failure to instruct the jury on the essential elements of the crime is an obvious, fundamental error that this Court may recognize under the plain-error doctrine, here, we find no obvious, fundamental error. *Montgomery v. State*, 253 So. 3d 305, 316 (Miss. 2018). Stewart claims S-1B and S-2B insufficiently described sexual penetration as "inserting his penis into her vaginal, anal and oral *areas*." (Emphasis added.) Stewart points out that statutorily, sexual penetration is defined as penetration of another person's "genital or anal *openings*." Miss. Code Ann. § 97-3-97(a) (emphasis added). While instruction S-4 did use the statutory term "genital or anal openings," Stewart insists this still was insufficient because the instruction described sexual penetration as "any touching or penetration of the genital or anal openings"—and mere touching is not enough for sexual penetration to occur. But in applying plain-error review, we do not read each challenged jury instruction in

isolation but rather read the instructions as a whole. *Montgomery*, 253 So. 3d at 316. And here, when S-1B and S-2B are reach in conjunction with S-4, these instructions make clear that for sexual penetration to occur, there must be penetration of the genital and anal openings. And when "the jury instructions, read as a whole, fairly announce the law of the case and create no injustice, no reversible error will be found." *Id.* (citing *Harris v. State*, 861 So. 2d 1003, 1014 (Miss. 2003)).

### IV.    Cross-Examination

¶33.    Finally, Stewart argues that the trial court violated his constitutional right to confront the witnesses against him by improperly limiting his cross-examination of the State's witnesses. While we review constitutional issues de novo, we review a trial court's evidentiary rulings for abuse of discretion. *Jenkins v. State*, 102 So. 3d 1063, 1065 (Miss. 2012). And here we find no abuse of discretion—let alone one that rose to a constitutional violation.

¶34.    Again, both the Sixth Amendment and the Mississippi Constitution protect Stewart's right to confront witnesses against him. U.S. Const. amend. VI; Miss. Const. art. 3, § 26; *see also* MRE 611(b) (allowing for open cross-examination). But this does not mean the accused has "the right to cross-examine every witness on every possible subject." *Howell v. State*, 163 So. 3d 240, 251 (Miss. 2014). For example, "some topics may be barred as irrelevant or statements may be objected to as hearsay." *Id.*

¶35.    The first topic Stewart claims he should have been allowed to delve into was clearly irrelevant. Stewart asserts the trial judge should have permitted his counsel to cross-examine

Dee over the fact she used to have a boyfriend also called C.J. But it was obvious that both girls were talking about Stewart when they referred to "*Uncle* C.J." (Emphasis added.) And there was no evidence Dee's former boyfriend, who was out of the picture before Dee came into Jane's and Alice's lives, had any access to either girl. So the trial judge did not abuse her discretion by barring this line of questioning.

¶36. Stewart also complains that the trial judge did not permit his counsel to further question the records custodian that authenticated the Mississippi Department of Health's record that Stewart tested positive for chlamydia. But by that point in trial, Stewart's chlamydia records had already been ruled admissible and entered into evidence. The trial judge sustained the State's objection to Stewart's questioning because Stewart's counsel was merely trying to undermine that earlier evidentiary ruling. The questions Stewart's counsel wanted to ask either were irrelevant to the already-ruled-upon authenticity and admissibility of the public record or they were about the underlying STD testing. Stewart was tested at a clinic, which in turn reported the positive result to the health department. So how the testing was conducted was clearly outside the scope of the records custodian's knowledge. Thus, the judge did not abuse her discretion by sustaining an objection to Stewart's counsel's continuing this line of questioning.

¶37. Because the trial court did not abuse its discretion by making these evidentiary calls, we find no reversible error.

¶38. **AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND ISHEE, J.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶39. I concur in the majority's affirmance of Stewart's conviction. I write separately to comment on the indictment's incorrect use of the conjunctive (or connective word) *and* to allege multiple methods of penetration. "Every material fact and essential ingredient of the offense—every essential element of the offense—must be alleged with precision and certainty, or, as has been stated, every fact which is an element in a prima facie case of guilt must be stated in the indictment." ***Love v. State***, 211 Miss. 606, 52 So. 2d 470, 472 (1951). "The purpose of an indictment is to provide the [presumptively innocent] defendant with a concise statement of the crime so that he may have a reasonable opportunity to prepare and present a defense to those charges." ***Burrows v. State***, 961 So. 2d 701, 705 (Miss. 2007).

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

***Cole v. Arkansas***, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948) (citing ***In re Oliver***, 333 U.S. 257, 68 S. Ct. 499, 92 L. Ed. 682 (1948)).

¶40. Stewart argues that, because the State alleged three methods of penetration in one count of the indictment, the State took upon itself the burden of proving all three. It is possible for the State to overload its burden of proof unnecessarily by saying too much in an indictment. *See* ***Murrell v. State***, 655 So. 2d 881, 883-85 (Miss. 1995), *disagreed with on other grounds by* ***Dilworth v. State***, 909 So. 2d 731 (Miss. 2005), *disagreed with by* ***Clark***

16

*v. State*, 315 So. 3d 987 (Miss. 2021); ***Spears v. State***, 294 So. 3d 637 (Miss. Ct. App. 2019) (the State brought on itself the additional burden of proving multiple subsections of the sexual assault statute by placing them, unnecessarily, in the indictment). The method of penetration is not an essential element of the crime; rather, "[s]exual penetration is the essence of the offense of sexual battery." ***Bateman v. State***, 125 So. 3d 616, 623 (Miss. 2013) (internal quotation marks omitted) (quoting ***West v. State***, 437 So. 2d 1212, 1213 (Miss. 1983)).

¶41.    The indictment against Stewart alleged methods of penetration in the conjunctive when the better practice would have been to allege them in the disjunctive. Still better, the drafter of the indictment should have chosen only the method(s) that actually applied.[4] However, "[n]ot every variance between the language of the indictment and the proof is material." ***Burrows***, 961 So. 2d at 705 (alterations in original) (internal quotation marks omitted) (quoting ***Burks v. State***, 770 So. 2d 960, 963 (Miss. 2000)); *see also* ***Hennington v. State***, 702 So. 2d 403, 408 (Miss. 1997); ***Mendez v. State***, 309 So. 3d 1109 (Miss. Ct. App. 2020); ***Chandler v. State***, 789 So. 2d 109 (Miss. Ct. App. 2001) . Stewart was charged with one count of sexual battery against each child, and he concedes that the State presented sufficient evidence of one of the several methods of penetration applicable to each of the children. His defense—complete denial of guilt—was not affected by the variance.

---

[4] Because we find (and Stewart does not contest) that the State presented evidence sufficient to support a finding of vaginal penetration, I do not believe it to be necessary to undertake an analysis of sufficiency of the evidence for all three methods listed in the indictment. *See* Maj. Op. ¶¶ 28-29.

¶42. An indictment commences proceedings for felonies in circuit court when the State's burden of proof is greatest, and the defendant is presumed innocent. An important part of a felony prosecutor's job is the preparation of indictments for grand juries. Those who draft indictments should do so with great care, precision, and specificity. In the present case, the State is compelled by inartful draftsmanship to argue on appeal that the use of the conjunctive, in this particular case, amounted to an immaterial variance. I would affirm on this rationale alone without *sua sponte* expanding our holding to say, essentially, that the facts describing the method by which an essential element of a crime is accomplished may always be pled in the conjunctive and proved in the disjunctive. *See* Maj. Op. ¶ 30. Our state's corps of prosecutors is more than capable of better lawyering than that.

¶43. I therefore concur in result only.

**KING, P.J., AND ISHEE, J., JOIN THIS OPINION.**